```
UNITED STATES DISTRICT COURT                              NOT FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
DANIEL WIRSHUP,                                      :
                                                     :
                    Plaintiff,                       :    MEMORANDUM & ORDER
                                                     :
          - against -                                :
                                                     :    No. 05-cv-4086
                                                     :
SUFFOLK COUNTY POLICE DEPARTMENT;                    :
THOMAS J. SPOTA; SUFFOLK COUNTY DISTRICT             :
ATTORNEY'S OFFICE; ASSISTANT DISTRICT                :
ATTORNEYS JANE AND JOHN DOES 1-5, KEVIN              :
WARD, JOHN SCOTT PRUDENTI, and                       :
CHRISTOPHER NICCOLINO; DETECTIVES/POLICE             :
OFFICERS TOM IACOPELLI, ROBERT AMATO,                :
RAYMOND FELICE and JOHN AND JANE DOES 1-5,           :
and THE COUNTY OF SUFFOLK                            :
                                                     :
                    Defendants.                      :
-----------------------------------------------------------------------X
```

KORMAN, *J*.:

Plaintiff, Daniel Wirshup, became a subject of a widespread corruption investigation which began in 2002. (Defs.' Rule 56.1 St. at ¶ ¶ 1, 4-6). At that time, the Suffolk County District Attorney's Office suspected that the Town of Brookhaven's Highway Superintendent was steering paving contracts to Debut Construction Company ("Debut") in exchange for contributions to her political campaign, and that Debut was billing the Town for work that had not been completed. Ultimately, a wider investigation into Debut led to the indictment of its president and co-owner, Stephen Milvid. (*Id.* at ¶ 1, 4).

During the investigation, Suffolk County detectives obtained information that prompted them to investigate Milvid and Debut further with respect to other municipal contracts Debut had obtained, such as the Incorporated Village of Patchogue ("Patchogue"). (*Id.* at ¶ 3). Plaintiff served as Patchogue's Superintendent of Public Works, and he became a suspect when they

1

discovered, among other evidence, billing vouchers signed by plaintiff which indicated that the Village was being overbilled. (*Id.* at ¶ 4-5). A subsequent inspection by independent engineering firms working with detectives revealed deficiencies in work that was purportedly inspected, approved, and signed off on by plaintiff pursuant to his official duties. (*Id.* at ¶ 10). Moreover, detectives discovered a number of vouchers paid by Patchogue to Debut for work that was never performed but was nevertheless approved by plaintiff. (*Id.* at ¶ 11).

The detectives theorized that plaintiff may have been acting at the behest of others in a deliberate course of conduct that favored Debut and defrauded Patchogue. (*Id.* at ¶ 14). Thus, a decision was made to attempt to have plaintiff cooperate in the investigation. (*Id.* at ¶ 16). In October, 2002, plaintiff and his attorney, Patrick O'Connell, met with ADAs and detectives, who asked plaintiff to assist with the investigation. (*Id.* at ¶ 17-18). Plaintiff denied any knowledge of wrongdoing, and he and the District Attorney were unable to come to an agreement by which he would cooperate. (*Id.* at ¶ 18-19). At the conclusion of the meeting, defendant ADA Niccolino urged O'Connell to withdraw from his representation of plaintiff because O'Connell represented a Brookhaven Official who was simultaneously being investigated for a similar course of conduct involving Debut. (*Id.* at ¶ 19). Moreover, the investigation had revealed that O'Connell had a close personal relationship with Patchogue's mayor, who was a potential target of their investigation. (*Id.*).

The next contact plaintiff had with detectives was on February 26, 2003, when he encountered defendant Detective Amato and defendant Detective Iacopelli at a 7-Eleven store in Patchogue. (Defs.' Rule 56.1 St. at ¶ 22). Amato and Iacopelli spoke to plaintiff in their vehicle and attempted to "cultivate" him as an informant. (*Id.* at ¶ 23-24). They explained to him that if he wished to cooperate, he could not be represented by O'Connell, but that he would have to be

represented by another attorney. (*Id.* at ¶ 24). Plaintiff was not asked to, nor did he independently, make any inculpatory statements. (*Id.* at ¶ 25).

Plaintiff told O'Connell about his conversation with Amato and Iacopelli, and O'Connell advised him to record his subsequent conversations with them. (*See* Ex. 6 to Aff. of Richard T. Dunne, Wirshup Dep. at 106:6-11). Plaintiff had three subsequent conversations with Amato and Iacopelli, all of which were recorded. (*See* Ex. 10 to Aff. of Richard T. Dunne). The majority of the conversations consisted of Amato and Iacopelli urging plaintiff to obtain representation by an attorney other than O'Connell and to cooperate in their investigation. They told plaintiff that he was a "victim of circumstance," (*id.*, 2/10/03 conversation with Amato), who had "done some things which could be construed to be . . . criminal." (*Id.,* 2/24/03 conversation with Amato). At the end of the last conversation on March 7, 2003, the detectives asked plaintiff to contact them when he had an unconflicted attorney, but he never did so. (*Id.;* Defs.' Rule 56.1 St. at ¶ 35).

On May 28, 2003, a Superseding Indictment was handed up charging, *inter alia*, Steven Milvid, Debut Concrete, and Daniel Wirshup with various counts covering their interactions in the Town of Brookhaven and the Village of Patchogue. (Defs.' Rule 56.1 St. at ¶ 36). On May 28, 2004, plaintiff was found not guilty after a bench trial. (Ex. 11 to Aff. of Richard T. Dunne, Verdict).

Subsequently, he filed this action against the County of Suffolk, Suffolk County Police Department, Suffolk County District Attorney's Office, and various individual Suffolk County detective and Assistant District Attorney defendants, under 42 U.S.C. § 1983. While the complaint alleges a hodgepodge of claims, plaintiff has narrowed it. Specifically, he alleges that, "in the instant action," he "seeks recovery against defendants . . . for claims of False Arrest and

Malicious Prosecution." (Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 4). Defendants now move for summary judgment.

## STANDARD OF REVIEW

Summary judgment may be granted when it is shown that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).

To defeat a summary judgment motion, the non-movant must proffer affidavits, depositions, or other documentation setting forth specific facts to demonstrate that there exists a genuine issue of material fact to be tried. *Rule v. Brine,* 85 F.3d 1002, 1011 (2d Cir. 1996). The non-moving party must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail. Corp.*, 902 F.2d 174, 178 (2d Cir. 1990), and may not rely on allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996).

Plaintiff has not only failed to come forward with any evidence of the kind sufficient to defeat a motion for summary judgment, he has also failed to comply with Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"), which requires a party moving for summary judgment to submit a

statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. *See* Local Rule 56.1(a), (d). If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted. *See* Local Rule 56.1(c). However, "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir. 2003) (internal citations omitted). Plaintiff, though represented by counsel, has failed to provide a numbered response or to make objections to defendants' Statement Pursuant to Rule 56.1. Although plaintiff submitted a Rule 56.1 Statement signed by his attorney, he fails to cite to any admissible evidence supporting the facts he alleges. Because plaintiff has failed to properly respond to defendants' Statement of Material Facts, I accept the defendants' statement as true to the extent that the facts are supported by evidence in the record. *See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005).

## DISCUSSION

### I. False Arrest/False Imprisonment

The elements of a claim for false arrest or false imprisonment under § 1983 "are substantially the same as the elements of a false arrest claim under New York law." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotations and citations omitted). Under New York law, the elements of a false arrest, which are synonymous with those of false imprisonment, are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff

5

was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Id.*

Plaintiff's cause of action for false arrest/false imprisonment is premised on his allegation that he "was illegally accosted by detectives; placed inside police vehicles; harassed, threatened and interrogated; and otherwise placed in situations where he did not feel free to leave throughout the investigation into the charges against him." (Compl. ¶ 68). Other than this allegation in his unsworn complaint, plaintiff does not allege any specific facts in support of this cause of action. Nor has he come forward with the kind of evidence necessary to defeat a motion for summary judgment. Moreover, to the extent plaintiff's false imprisonment claim is based upon the fact that he conversed with Amato and Iacopelli in their police car at the 7-Eleven for ten minutes, the undisputed evidence is that plaintiff freely entered the police car. (*See* Amato Dep. at 140:5-15; Iacopelli Dep. 23:17-24:17).

## II. Malicious Prosecution

A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must show: 1) a deprivation of liberty; 2) resulting from a governmental seizure; 3) in the form of legal process; 4) without probable cause or otherwise unreasonable; and 5) termination of the criminal proceeding in favor of the accused. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 116-18 (2d Cir. 1995). "A presumption of probable cause is created . . . by a grand jury's indictment." *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003).

Here, plaintiff was indicted by the grand jury on May 28, 2003. In order to succeed on his malicious prosecution claim, plaintiff "must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* "The burden of rebutting the presumption of probable cause requires the plaintiff to establish

what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." *Rothstein v. Carriere,* 373 F.3d 275, 284 (2d Cir. 2004); *see also Savino v. City of New York,* 331 F.3d 63, 73 (2d Cir. 2003) (noting that plaintiff bears the burden of rebutting the presumption of probable cause, and requiring plaintiff to submit sufficient evidence for a reasonable jury to find that the indictment was procured through misconduct).

Here, plaintiff argues that "the defendant investigators induced the defendant District Attorney's Office to prosecute based on fraudulent and misleading statements pertaining to Mr. Wirshup's official duties as Superintendent of Highways and the failure to present exculpatory evidence, which thereby constituted a reckless disregard for the truth about Mr. Wirshup's actions taken in his official capacity." (Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 15). Nevertheless, plaintiff has not come forward with any evidence in support of his claim. Indeed, the record is devoid of any evidence that any defendant acted in bad faith or gave perjured testimony before the grand jury. Plaintiff's "conjecture and surmise" that the indictment was tainted is insufficient to rebut the presumption of probable cause, *see Savino,* 331 F.3d at 73, and is insufficient to defeat defendants' summary judgment motion. *See McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n. 4 (2d Cir. 2006).

### III. Sixth Amendment Right to Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Plaintiff argues that his interaction with Amato and Iacopelli effectively deprived him of his right to have counsel present while they spoke to him and his right to have his counsel of choice represent him. (Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 24).

Plaintiff has not cited any authority for the proposition that money damages may be awarded in a § 1983 cause of action because a person was questioned without the assistance of counsel. *See Bradley v. Health Midwest, Inc.,* 203 F.Supp.2d 1254, 1258 (D. Kan. 2002) (noting that there are no known cases awarding such damages); *O'Hagan v. Soto,* 523 F. Supp. 625, 630 (S.D.N.Y. 1981) (same). Moreover, "[i]t has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972). The Second Circuit, in applying *Kirby,* has held that a review of state law is necessary in order to determine when a criminal proceeding actually commences. *See, Deshawn v. Safir,* 156 F.3d 340, 349 (2d Cir. 1998); *United States ex rel. Robinson v. Zelker,* 468 F.2d 159 (2d Cir. 1972). In that regard, New York State Criminal Procedure Law § 100.05 states that a criminal action is commenced by the filing of an accusatory instrument.

The evidence is undisputed that the contact between the plaintiff and the investigators occurred prior to the commencement of any criminal proceeding against the plaintiff. The last contact between investigators and plaintiff occurred on March 7, 2003 (Wirshup Dep. 126:16-127:17), and plaintiff was not indicted until May 28, 2003. Since plaintiff had not been arrested nor charged with any crime on the occasions on which he spoke with Amato and Iacopelli, his Sixth Amendment right to counsel had yet to attach. *See Neighbour v. Covert*, 68 F.3d 1508, 1511 (2d Cir. 1995). Moreover, during plaintiff's criminal trial, no evidence of any statement that he made to any defendant was introduced. (Wirshup Dep. at 131:9-132:8).

### IV. Claims Against Police Department, District Attorney's Office, and ADAs

A police department is not an independent, suable entity separate from the municipality in which the police department is organized. *See Lewis v. City of Mount Vernon,* 984 F.Supp.

748, 756 n. 2 (S.D.N.Y. 1997); *Orraca v. City of New York.*, 897 F.Supp. 148, 152 (S.D.N.Y. 1995). Similarly, a district attorney's office is not a separate legal entity capable of being sued pursuant to § 1983. *See Michels v. Greenwood Lake Police Dept.*, 387 F.Supp.2d 361, 367 (S.D.N.Y. 2005).

These causes of action fail for yet another reason. While the Constitution does not impose upon a prosecutor the obligation to bring exculpatory evidence to the attention of the grand jury, *See United States v. Williams*, 504 U.S. 36, 51-54 (1992), a person who knowingly causes a District Attorney to obtain an indictment based on false evidence does not enjoy such immunity. *White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008). Nevertheless, plaintiff has not come forward with any evidence to support a claim that the Suffolk County detectives caused the District Attorney to obtain an indictment based on false evidence, or to withhold *Brady* material. Moreover, the Second Circuit has held that the District Attorney enjoys absolute immunity for conduct that includes "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" and "deliberately suppressing *Brady* material." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995); *see also Dory v. Ryan*, 25 F.3d 81 (2d Cir. 1994).

### V.     Claims Against Suffolk County

As discussed above, plaintiff has not alleged any constitutional violation sufficient to state a § 1983 violation. Thus, his claims against Suffolk County must be dismissed as well. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). Even if plaintiff had shown such a violation, his claims against Suffolk County would fail because he has presented no evidence of any municipal policies or customs which caused the alleged constitutional violations. *See Monnell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).

## CONCLUSION

The defendants' motion for summary judgment is GRANTED.

SO ORDERED

Brooklyn, New York
August 28, 2009

*Edward R. Korman*

Edward R. Korman
Senior United States District Judge